## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br><br>**LISA M. PHIPPS,**<br><br>                       **Debtor.** | **Bankruptcy Case<br>No. 21-40100-JMM** |

### MEMORANDUM OF DECISION

**Appearances:**

Kameron M. Youngblood, Idaho Falls, Idaho, former attorney for debtor.

Andrew S. Jorgensen and Jason R. Naess, Boise, Idaho, attorney for the United States Trustee.

Heidi Buck Morrison, Pocatello, Idaho, attorney for trustees Gary Rainsdon and Sam Hopkins.

### *Introduction*

Debtor Lisa M. Phipps ("Debtor") filed a chapter 7[1] bankruptcy petition on February 17, 2021.  Ex. 372 at Doc. No. 1.  In doing so, she was represented by attorney Kameron M. Youngblood ("Youngblood").  Upon finding a number of concerning issues with how Youngblood was handling his cases, the United States Trustee ("UST") filed a motion for sanctions in this and over 50 other cases, of which 44 were assigned to this Court.  *Id.* at Doc. No. 29.  The Court conducted a hearing on the motions on November

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION — 1

18, 2021, after which it permitted supplemental briefing.  Following the briefing, the

motions were deemed under advisement.

     After considering the record, submissions, and arguments of the parties, as well as

applicable law, this decision resolves the motion.  Fed. R. Bankr. P. 7052; 9014.

### *The Sanctions Motion*

     In the motion in this case, the UST alleges two specific items of sanctionable

conduct: first, that Youngblood violated the wet-ink signature requirements found in the

Bankruptcy Code, Rules, and the Court's local rules, and second, that he failed to file a

disclosure under Rule 2016.  Moreover, with regard to the sanctions motions filed in each

of the separate cases, when considered as a whole, the UST alleges a pattern and practice

of violations under §526.  As a result, the UST seeks the following monetary and non-

monetary remedies:

1. Cancelling or voiding any contract or agreement between the Debtor and Youngblood under § 329;

2. Disgorging the fees Debtor paid to Youngblood under § 329;

3. Injunctive relief under § 526(c)(5) and the Court's inherent powers, specifically:
   a. Suspending Youngblood's practice in front of the Court until the Court is satisfied the concerns identified have been corrected;
   b. If Youngblood is allowed to practice in front of the Court again, requiring him to file a "status report" signed by the client and Youngblood in each case where he appears as counsel, attesting that:
      i. Youngblood personally met and reviewed the Petition, Schedules, Statement of Financial Affairs, and other documents with the client prior to filing;
      ii. The client's questions have been answered regarding the Petition, Schedules, Statement of Financial Affairs, and other documents, and the information included therein, and the client is satisfied he or she is receiving adequate representation from Youngblood; and
      iii. The client provided Youngblood a copy of the wet signatures for the

MEMORANDUM OF DECISION — 2

Petition, Schedules, SOFA, and other documents filed in the case. The requirement to file such a report should continue until the Court is satisfied it is no longer necessary.

4.  Imposing a civil penalty under § 526(c)(5)(B) against Youngblood to deter him from making untrue and misleading statements and misrepresentations in the future, as a result of his intentional violations, and pattern and practice of violating, §§ 526(a)(1), (a)(2), and (a)(3).

Ex. 372 at Doc. No. 29.  The Court will discuss the allegation and the sanctions sought.

### *Applicable Law, Analysis, and Disposition*

1.  "Wet-Ink" Signature Issues

Local Bankruptcy Rule 5003.1 governs electronic case filings.  According to this local rule, all documents to be filed in a bankruptcy case are to be filed electronically. LBR 5003.1(c).  Original documents are to be retained by the filing party "for a period of not less than the maximum allowed time to complete any appellate process, or the time the case of which the document is a part, is closed, whichever is later."  LBR 5003.1(e). The local rule also provides that the electronically filed document "shall be produced upon an order of the court."  *Id.*  Subsection (j) of the local rule addresses signatures.  It provides "[t]he electronic filing of any document by a Registered Participant shall constitute the signature of that person for all purposes provided in the Federal Rules of Bankruptcy Procedure.  For instructions regarding electronic signatures, refer to the ECF Procedures."  LBR 5003.l(j).  In turn, the "ECF Procedures" referred to are located on this Court's website.  *See* LBR 5003.1(b).  Paragraph 13A of the ECF Procedures document provides:

A Registered Participant filing a Verified Pleading [a pleading in which a person verifies, certifies, affirms or swears under oath or penalty of perjury

MEMORANDUM OF DECISION — 3

concerning the truth of matters set forth in that pleading or document]
electronically shall insure the electronic version conforms to the original,
signed pleading/document.  Each signature on the original, signed
pleading/document shall be indicated on the electronically filed Verified
Pleading with the typed name on the signature line of the person purported
to have signed the pleading/document.  *The electronic filing of a Verified
Pleading constitutes a representation by the Registered Participant that he
or she has the original, signed document in his or her possession at the
time of filing.*  The Registered Participant shall retain the Verified Pleading
for a period of not less than the maximum allowed time to complete any
appellate process, or the time the case or Adversary Proceeding of which
the document is a part, is closed, whichever is later. The document shall be
produced upon an order of the Court.

(emphasis added).  The ECF Procedures instruct attorneys to submit a scanned pdf copy

of the original signature page of the original and any amended petition, schedules, and

statement of financial affairs to the clerk at the same time as the electronic version is

filed.  ECF Procedures, at ¶ 13B.  Finally, the ECF Procedures provide that the "original

of all conventionally signed documents shall be retained pursuant to Dist. Idaho Loc. Civ.

R. 5.1(3) or LBR 5003.1(e)."  *Id.* at ¶ 19.

In this case, the UST argues that some of the signature pages filed in this case do

not pass muster.  *See* Exs. 369 (certification of notice under § 342(b), petition,

verification of creditor matrix); 370 (statement of current monthly income); 371

(statement of financial affairs, statement of intention, and declaration about schedules);

Exs. 434–436 (statement of domestic support obligations, all signed by Debtor on

February 10, 2021, each document containing different information).

Specifically, the UST contends that the signature pages "appear to be photographs

of signature pages that were either mailed, texted, or otherwise provided to Youngblood"

and therefore "it does not appear Youngblood physically obtained, and is retaining, the

MEMORANDUM OF DECISION — 4

original wet ink signatures[.]" Sanctions Motion, Ex. 372 at Doc. No. 29 at p. 13. While

the Court agrees that the pages at issue appear to be photographs or copies of signature

pages, the Court cannot join the UST's leap of logic and conclude that Youngblood has

never obtained and does not now retain the original wet ink signatures. There are other

plausible explanations for why poor-quality copies of wet signature pages might be filed

with the Court. The Court will not presume Youngblood engaged in sanctionable

conduct when the evidence is lacking.

The three domestic support statements filed in this case require further analysis.

The first one, filed the same date as the petition, indicates both that Debtor has no

domestic support obligations, but contains the name and phone number of the individual

holding the claim of support. Ex. 434. This inconsistency prompted a corrective entry

from the Court on February 17, 2021. Ex. 372. On March 3, 2021, Debtor filed another

statement of domestic support. Ex. 435. This one has the check mark indicating Debtor

has no such obligations scribbled out, and a handwritten "X" was placed next to the "yes"

box, indicating she does have a domestic support obligation. Moreover, the words

"Debtor doesn't know his address" were handwritten onto the form where the address for

the holder of the support claim was to be inserted, and "N/A" was handwritten on the

lines where the court name and jurisdiction and the case number were to be written. *Id.*

Finally, on March 28, 2021, Debtor filed one last statement of domestic support

obligations. Ex. 436. On this one, both the "yes" and "no" boxes are checked indicating

that Debtor both does and does not have a domestic support obligation. Next, the address

for the holder of the support claim has been typed in, as well as the court name,

MEMORANDUM OF DECISION — 5

jurisdiction, and case number. *Id.*

Most concerning, on each of the three documents, Debtor's signature bears the

same date, February 10, 2021, as that found in Ex. 434 and appears to the Court's

untrained eye to be the exact same signature and date. Moreover, the latter two domestic

support statements may have been docketed twice, as the docketing information printed

across the top appears to be double. Exs. 435–36. While the Court can deduce what

Youngblood may have done in this case—he took the photograph of the original from the

Court's docket, added new information and filed it again on the Court's docket—this

matter cannot be decided by deductions. The UST has the burden to prove that

Youngblood did not obtain or retain original wet signatures on those three domestic

support documents and he has not done so. While the documents certainly look suspect,

the Court must have more than suspicion to issue sanctions against Youngblood.

2.  Rule 2016(b) Disclosure

    *A.  Applicable Law and Facts*

Section 329 of the Code requires an attorney to disclose the amount of all

compensation "paid or agreed to be paid, if such payment or agreement was made after

one year before the date of the filing of the petition, for services rendered or to be

rendered in contemplation of or in connection with the case…." This disclosure

requirement is implemented by Rule 2016(b), which requires:

> Every attorney for a debtor, whether or not the attorney applies for
> compensation, shall file and transmit to the United States trustee within 14
> days after the order for relief, or at another time as the court may direct, the
> statement required by § 329 of the Code including whether the attorney has
> shared or agreed to share the compensation with any other entity…. A

MEMORANDUM OF DECISION — 6

supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

In this case, Youngblood failed to file the disclosure of compensation as required by the Bankruptcy Code and Rules.

### B.  Analysis and Disposition

The UST seeks to void or cancel the contract of employment between Youngblood and Debtor pursuant to § 329.  As noted above, that section requires an attorney to disclose the compensation paid or to be paid in connection with the bankruptcy case, the disclosure of which is made by the attorney under Rule 2016.

Section 329(b) provides that if the compensation paid to a debtor's counsel exceeds the reasonable value for the services provided, "the court may cancel any such agreement, or order the return of any such payment, to the extent excessive…."  Courts interpreting this provision have looked beyond the quantity of fees charged and used it to redress other issues with the attorney client relationship.  *See e.g., In re Grimmett,* No. BR 16-01094-JDP, 2017 WL 2437231, at *9 (Bankr. D. Idaho Jun. 5, 2017), *aff'd* No. 1:17-cv-00266-EJL (D. Idaho Feb. 16, 2018) (fees deemed excessive because fee agreement and collection measures created conflict of interest); *Hale v. United States Trustee (In re Basham),* 208 B.R. 926, 932 (9th Cir. BAP 1997) (the record "supports the bankruptcy court's finding that the fees were unreasonable given the … failure to provide competent and complete representation of the [debtors]); *In re Martin*, 197 B.R. 120, 126 (Bankr. D. Colo. 1996) ("The compensation to be paid to an attorney can be deemed excessive for a host of reasons, including but not limited to an attorney's failure to

MEMORANDUM OF DECISION — 7

perform agreed upon services, failure to comply with the disclosure requirements, the existence of conflicts of interest, and the like.").

There is no question that Youngblood failed to file the required disclosure of compensation, and the Court finds that cancelation of the contract between Youngblood and Debtor is warranted.

The Court now turns to the issue of disgorgement. The Bankruptcy Code's disclosure requirements are mandatory, and courts have held that an attorney who fails to comply with those requirements forfeits any right to receive compensation. *Hale*, 208 B.R. at 930–31 (citing *Peugeot v. United States Trustee (In re Crayton),* 192 B.R. 970, 981 (9th Cir. BAP 1996)). Once the bankruptcy court determines that an attorney has violated § 329 and Rule 2016, the bankruptcy court has the authority to order the attorney to disgorge all of the attorney's fees. *Hale,* 208 B.R. at 931; *In re Blackburn*, 448 B.R. 28, 43 (Bankr. D. Idaho 2011) ("The state of the law is clear—an attorney who neglects to meet the disclosure requirements of § 329(a) and Rule 2016(b), even if inadvertently, forfeits the right to receive compensation for services rendered and may be ordered to return fees already received."). Indeed, the Tenth Circuit has held that "full disgorgement is [not] always appropriate for failure to disclose under § 329[,] [b]ut it should be the default sanction, and there must be sound reasons for anything less." *SE Prop. Holdings, LLC v. Steward (In re Stewart)*, 970 F.3d 1255, 1267 (10th Cir. 2020). The Ninth Circuit has held that even a negligent or inadvertent failure to fully disclose relevant information under Rule 2016 may result in denial of requested fees. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 882 (9th Cir. 1995).

MEMORANDUM OF DECISION — 8

Finally, the caselaw is clear that filing an inaccurate disclosure statement "is appropriate basis for the total disallowance of compensation by counsel.") *Grimmett*, 2017 WL 2437231 at *10; *see also Hale,* 208 B.R. at 931; *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045–46 (9th Cir. 1997); *Park–Helena Corp.*, 63 F.3d at 881–82.

Because Youngblood did not file a Rule 2016(b) disclosure, the Court cannot discern what fees the Debtor paid to him in connection with this case.  The Court will therefore invite the Debtor to file with the Court proof of the fees she paid, and, after review, the Court will order disgorgement as necessary.

3.  Sanctions

As noted above, because Youngblood failed to file the required disclosure of compensation under Rule 2016(b), cancellation of the attorney/client contract between Debtor and Youngblood and disgorgement of Youngblood's fee is warranted.

In addition to those sanctions, the UST seeks injunctive relief as well as a civil penalty.  The Court concludes that injunctive relief under both § 526 and its inherent powers is appropriate here.

*A.  "Pattern and Practice" of Violations Under § 526*

Section 526 of the Code provides restrictions on "debt relief agencies."  It provides, in pertinent part:

> (a) A debt relief agency shall not--
>     (1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;

MEMORANDUM OF DECISION — 9

(2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

(3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—

> (A) the services that such agency will provide to such person; or
>
> (B) the benefits and risks that may result if such person becomes a debtor in a case under this title;

\* \* \* \* \*

(c)(5) Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may--

> (A) enjoin the violation of such section; or
>
> (B) impose an appropriate civil penalty against such person.

A bankruptcy attorney is a debt relief agency.  *See* § 101(12A) (defining "debt relief agency" as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration"); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232, 130 S. Ct. 1324, 1329, 176 L. Ed. 2d 79 (2010) (holding that a bankruptcy attorney falls within the definition of a "debt relief agency.")  The Code also defines "assisted person" as "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $204,425.[2]  Youngblood qualifies as a debt relief agency

---

[2] This figure was originally $150,000, and was adjusted to $204,425 effective April 1, 2019.  The amount increased recently to $226,850, effective April 1, 2022.  All cases at issue here were filed when the amount was $204,425.

MEMORANDUM OF DECISION — 10

for each of the cases before this Court in which the sanctions motion was filed, as each of

the debtors checked the box indicating his or her debts consisted of primarily consumer

debts, and the value of their nonexempt property was less than $204,425.

As the statute above indicates, if a debt relief agency represents to an assisted

person that it will provide certain services in connection with a bankruptcy case, and then

fails to perform those services, the debt relief agency has violated § 526(a)(1).  Moreover,

§ 526(a)(2) is violated if a debt relief agency makes, or counsels or advises any assisted

person to make, a statement in a document that is filed with the court, that is untrue or

misleading, or using reasonable care should have been known to be untrue or misleading.

Finally, if a debt relief agency misrepresents the services that it will provide to an assisted

person or the benefits and risks that may result if such person files a bankruptcy petition,

then § 526(a)(3) may have been violated.

Moreover, if the violations of § 526 are determined to be intentional, or if a clear

and consistent pattern or practice of violating § 526 is found, the statute permits the court

to enjoin the violation and impose a civil penalty against the attorney.  § 526(c)(5).  The

UST argues that it has demonstrated a pattern and practice of violations of § 526 and has

asked for both an injunction and the imposition of a civil penalty in this case.

The Court finds that a clear and consistent pattern and practice of violating § 526

has been demonstrated.  Recall, if Youngblood, as a debt relief agency, made an untrue or

misleading statement in a document that is filed with the court, § 526(a)(2) has been

violated.  Moreover, if Youngblood, as a debt relief agency, failed to perform any service

that he informed the debtor he would provide in connection with the case, such is

MEMORANDUM OF DECISION — 11

likewise a violation of § 526(a)(1).  Of the forty-four cases assigned to this Court in

which the UST filed the sanctions motion, this Court has determined the following:

| | |
|---|---|
| Violation of Rule 1007 and § 521: | 20 cases |
| 2016(b) disclosure was misleading: | 31 cases |
| 2016(b) disclosure was inconsistent: | 31 cases |
| Conflict of interest in fee agreement: | 23 cases |

The UST has established a clear pattern and practice of violating § 526.  *See In re*

*Hanawahine*, 577 B.R. 573, 580 (Bankr. D. Haw. 2017) (a pattern and practice was

established by the fact that bankruptcy courts in three other jurisdictions had sanctioned

the bankruptcy firm and/or its principal for abandoning debtors, and a motion was

pending in a fourth jurisdiction.)  Such violation exposes Youngblood to both injunctive

and civil penalties.

### B.  The Court's Inherent Powers

The Supreme Court has made it clear that an Article III federal court has

the inherent power "to control admission to this bar and to discipline attorneys who

appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991).  The Ninth Circuit

recognizes that bankruptcy courts also "have the inherent power to sanction

that *Chambers* recognized exists within Article III courts."  *Caldwell v. Unified Cap.*

*Corp.* (*In re Rainbow Mag., Inc.*), 77 F.3d 278, 284 (9th Cir. 1996); *see also In re*

*Aleman*, No. 14-00606-TLM, 2015 WL 1956271, at *1–2 (Bankr. D. Idaho Apr. 29,

2015); *In re Hurd,* 2010 WL 3190752, at *2 (Bankr. D. Idaho Aug. 11, 2010) ("A

bankruptcy court has the authority to regulate the practice of lawyers who appear before

it.  Such authority stems from the court's inherent powers, the Code and the Rules.");

MEMORANDUM OF DECISION — 12

*Gardner v. Law Office of Lyndon B. Steimel (In re Valentine),* 2014 WL 1347229, at * 3

(Bankr. D. Idaho Apr. 3, 2014) ("The BAP recognized that, under Ninth Circuit

precedent, the bankruptcy courts have the power to sanction under their civil contempt

authority under § 105(a) and under their inherent sanction authority." (internal quotations

omitted)).

These inherent powers are not without limits, however. "Because of their

potency, inherent powers must be exercised with restraint and discretion." *Chambers*,

501 U.S. at 44. Thus, like the bankruptcy court's civil contempt authority, inherent

sanction authority "does not authorize significant punitive damages." *Knupfer v.*

*Lindblade (In re Dyer),* 322 F.3d 1178, 1197 (9th Cir. 2003) (noting that the Ninth

Circuit has "refrained from authorizing a punitive damage award under the bankruptcy

court's inherent sanction authority"). "Civil penalties must either be compensatory or

designed to coerce compliance." *Dyer,* 322 F.2d at 1192 (citing *F.J. Hanshaw Enters.,*

*Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137–38 (9th Cir. 2001)).

When there is bad-faith conduct in the course of litigation that could be adequately

sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the

inherent power. But if in the informed discretion of the court, neither the statute nor the

Rules are up to the task, the court may safely rely on its inherent power. *Chambers*, 501

U.S. at 50.

C. *Injunctive Relief Sought*

Initially, the Court notes that it is possible Youngblood no longer intends to

practice law. He indicated at the hearing on this motion that he was unable to represent

MEMORANDUM OF DECISION — 13

the Debtor and asked to withdraw from the cases in which the sanctions motions had

been filed.  Moreover, since the hearing, the Court has been informed that Youngblood

has not paid his annual bar dues, and on March 14, 2022, the Idaho Bar Association

suspended him from the practice of law.  As a result, this Court issued a reciprocal notice

of suspension and turned off Youngblood's electronic filing privileges.  Nevertheless,

operating on the assumption that Youngblood will one day return to practicing law, the

Court will consider the UST's request for injunctive sanctions.

In the motion, the UST seeks several forms of injunctive relief.  The Court will

consider each.  First, the UST requests suspension of Youngblood's practice before this

Court until the Court is satisfied that the issues raised in the pending motion have been

corrected.  At present this is moot, as Youngblood currently has no filing privileges.

Next, the UST seeks to require Youngblood to file a "status report" or other

document with the Court in each case where he appears as counsel, for as long as the

Court deems necessary.  This report is intended to provide guard rails to channel

Youngblood's practice to conform with the Code, Rules, and Idaho Rules of Professional

Conduct.  Specifically, the UST envisions this report to include what is essentially an

affidavit of the debtor bearing a wet signature as well as a certification by Youngblood

indicating:

> 1)  that Youngblood personally met and reviewed the Petition, Schedules,
> Statement of Financial Affairs, and other documents with the debtor prior to filing;
>
> 2)  that the debtor has had his or her questions answered and is satisfied with
> Youngblood's representation; and
>
> 3)  that the debtor has provided, and Youngblood will retain, copies of the wet

MEMORANDUM OF DECISION — 14

signatures filed in the case.

The Court concludes most of these provisions are appropriate.  The requirement to retain the debtors' wet signatures in all cases not only complies with what is required of an attorney filing electronically, but will ensure Youngblood obtains and files wet signatures for the debtors in their respective cases.  Moreover, a statement from both Youngblood and his clients that Youngblood has met with the client and reviewed all important documents prior to filing will serve to align his new practice with his legal and ethical obligations.

Next, while the UST's request for a statement from the debtor that his or her questions have been answered and he or she is satisfied with Youngblood's representation is well-meaning, the Court does not find it appropriate.  Instead, the Court will order that the client provide a statement that he or she has had a reasonable opportunity to converse with Youngblood and to ask questions, and that Youngblood has responded to those questions.  The Court will not require that every client be "satisfied" with Youngblood's representation, however.  The Court understands that client satisfaction is dependent on many different factors, and that counsel may be doing an excellent job and complying with all statutes, Rules, and ethical obligations, yet the client could remain unsatisfied for some reason.  Thus, the Court will not order this relief.

/ / / / / /

MEMORANDUM OF DECISION — 15

### D. Civil Penalty

Finally, the UST asks that the Court impose a civil penalty pursuant to

§ 526(c)(5)(B)[3] to deter him from making untrue and misleading statements and

representations in the future.  While § 526(c)(5)(B) permits the imposition of a civil

penalty where a pattern and practice of violations has occurred, the Court declines the

UST's invitation here.

A civil penalty must be appropriate in amount and intended to deter violative

conduct in the future.  *In re Hanawahine*, 577 B.R. at 580 (citing *In re Huffman*, 505 B.R.

726, 766 (Bankr. S.D. Miss. 2014)); *In re Dellutri L. Grp.*, 482 B.R. 642, 653–54 (Bankr.

M.D. Fla. 2012) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S. Ct.

497, 499, 93 L. Ed. 599 (1949) (a civil sanction is "remedial in nature and intended to

enforce compliance.")).  While the UST has established a clear and consistent pattern of

violations on Youngblood's part, the Court finds a civil penalty unnecessary as a

deterrent.  By this decision and the corresponding order, the Court will require both

disgorgement of the fees paid in this case as well as significant record keeping and

reporting requirements in future cases.  These measures are designed to curtail

Youngblood's cavalier approach to the practice of law and ensure that his future practice

conforms to applicable statutes, Rules, and ethical responsibilities.  As such, an additional

deterrent in the form of a civil penalty is unwarranted here.

---

[3] This statute provides, "if the court, on its own motion or on the motion of the United States trustee or
the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent
pattern or practice of violating this section, the court may … (B) impose an appropriate civil penalty
against such person."

MEMORANDUM OF DECISION — 16

### *Conclusion*

Finding merit in some of the allegations raised in the UST's motion for sanctions, the Court will 1) cancel the attorney/client contract between Youngblood and the Debtor; 2) order disgorgement of the fees paid by Debtor, once proven, to Youngblood for his services in this case, and 3) impose injunctive relief as follows:  should Youngblood return to the practice of law, he will have to obtain, file, and retain each debtor's wet signatures in accordance with the requirements of the Code, Rules, Local Rules, and the Court's ECF Procedures; he will have to file a statement bearing a wet signature from the client, attesting that Youngblood has met with the client and reviewed all important documents prior to filing; and finally, that the client has had a reasonable opportunity to converse with Youngblood and to ask questions, and that Youngblood has responded to those questions.  The Court will not impose a civil penalty in this case.

A separate order will be entered.

DATED:  May 4, 2022

JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION — 17